COLEMAN, Justice,
specially concurring:
¶ 24. In a legal world where Stewart v. State, 372 So.2d 257 (Miss.1979), is good law, I am of the opinion that the majority is correct, and I concur with the opinion authored by Presiding Justice Randolph. I write separately because, in my opinion, the Mississippi Supreme Court exceeded the boundaries of its constitutional authority when, in Stewart v. State, 372 So.2d 257 (Miss.1979), it amended Mississippi Code Section 97-3-79 to prohibit a judge from sentencing one convicted of armed robbery to any term of years greater than the defendant’s life expectancy; I am of the opinion that Stewart must be overruled.
*1001 ¶25. We many times have noted, but perhaps fewer times followed, the principle that our role in the constitutional framework of our state government “should not place [the Court] in the position of changing the substantive law enacted by the Legislature.” Little v. Miss. Dep’t of Transp., 129 So.3d 132, 138 (¶ 12) (Miss.2013) (citing Stockstill v. State, 854 So.2d 1017, 1022-23 (¶ 13) (Miss.2003) (“It is not the duty of this Court to add language where we see fit.”)). Stated differently, we have a “constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation.” Tallahatchie Gen. Hosp. v. Howe, 49 So.3d 86, 92 (¶ 17) (Miss.2010). The Legislature “alone has the power to create and modify statutes. It is not the province of the Court to insert requirements where the Legislature did not do so.” Finn v. State, 978 So.2d 1270, 1272-1273 (¶ 9) (Miss.2008) (emphasis added); see also Zambroni v. State, 217 Miss. 418, 424, 64 So.2d 335, 337 (1953) (“It is not our province to write the statutes, but only to construe them as written.”); Harris v. State, 179 Miss. 38, 175 So. 342, 344 (1937) (“In construing this statute, we are admonished and have clearly in mind that penal statutes must be strictly construed, and that the court can neither add to nor take from them, and we cannot by judicial construction, or considerations of expediency, supply what is palpably omitted from a statute.”). Despite such limits on our power, the Stewart Court did indeed insert a requirement into Section 97-3-79 that the Legislature did not — the requirement that a judge-imposed sentence be for less than the defendant’s reasonable life expectancy.
¶ 26. Section 97-3-79 provides as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.
Miss.Code Ann. § 97-3-79 (Rev. 2014). The statute as enacted by the Legislature provides two, and. only two, sentencing possibilities. First, a jury may choose to sentence the offender to a life sentence. If not, the judge may impose a “penalty of imprisonment ... for any term not less than three (3) years.” Id. (emphasis added). The requirement that the latter option, a judicially-imposed sentence, be for less than the life expectancy of the defendant is not in the statute. It was created by the Court.
¶ 27. The Stewart Court explained its creation of the requirement by comparing Section 97-3-79 to the death penalty statute which places the death sentence “within the sole province of the jury.” Stewart, 372 So.2d at 258 (quoting Bullock v. Harpole, 233 Miss. 486, 494, 102 So.2d 687, 690 (1958)). However, the statute at issue in Bullock, the then-existing Section 2536, Code of 1942, provided by its very terms that only the jury could impart the death penalty. In fact, the way it was worded, Section 2536, Code of 1942, left all sentencing options in the sole province of the jury.[7] Bullock, 233 Miss, at 494, 102 So.2d *1002 at 690. Nothing at all in the wording of Section 97-3-79 prohibits the trial judge from setting a penalty of years greater than the life expectancy of the one convicted. To achieve such a result, the Stewart Court had to add to the language chosen by the Legislature.
¶28. Even if the Stewart Court was correct, that, in its wisdom, Section 97-3-79 made better sense and better policy with the added requirement, under our State’s Constitution and the strict separation of powers it explicitly imposes in Article 1, Section 2, we lack the power to substitute our judgment for that of the Legislature and to judicially amend its statutes. The prohibition exists for good reason. As we elsewhere noted,
The objectives desired to be accomplished and the evils sought to be prevented by separation of governmental powers were articulated by the authors of The Federalist. In that work James Madison stated:
... It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it.
The Federalist, No. 48 (J. Madison) (J. Cooke ed. 1961).
Thomas Jefferson also wrote of the necessity of internal restraints on the powers of government:
... An elective despotism was not the government we fought for, but one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time. Jefferson, “Notes on the State of Virginia,” 1781-1785, ch. 13, as reprinted in “the Complete Jefferson” by Padover, Ch. XIV, pp. 648, 649.
Book v. State Office Building Commission, 238 Ind. 120, 149 N.E.2d 273, 294 (1958).
In his farewell address George Washington observed,
The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human *1003 heart, is sufficient to satisfy us of the truth of this position.
Book v. State Office Building Commission, 149 N.E.2d at 294.
Alexander v. State By and Through Atllain, 441 So.2d 1329, 1336 (Miss.1983).
¶ 29. Our trial courts are perfectly capable of enforcing Section 97-3-79 as written and without the extra requirement added by the Stewart Court. See Franklin Collection Serv., Inc. v. Kyle, 955 So.2d 284, 288-289 (¶ 13) (Miss.2007) (“[T]his Court has no right, prerogative, or duty to bend a statute to make it say what it does not say. No citation of authority is necessary for the proposition that courts, judges, and justices sit to apply the law as it is, not make the law as they think it should be.”). As we wrote in McAdory v. State, 354 So.2d 263 (Miss.1978), overruled by Stewart, 372 So.2d at 257, the statute as written simply means that, if a jury chooses a life sentence, the trial judge has no discretion and must impart a life sentence. Id. at 266. If the jury did not so choose, the trial judge has discretion to impart any sentence greater than three years. Id. A sentence of one hundred years imposed after a jury declines to mandate a life sentence violates no part of the statute as crafted by the Legislature. It violates only the Stewart Court’s language.
¶ 30. The Stewart requirement is nothing but the unconstitutional imposition of judicial power over a political question. See Monaghan v. Reliance Mfg. Co., 236 Miss. 462, 470 111 So.2d 225 (1959) (“The function of the court is to construe the legislative act and not to add to it or deduct from it that which the legislature itself did not enact into the statute”). We must guard against such overreaching, even if doing so means revisiting an old decision which has shaped how criminals have been sentenced for decades. When it comes to any movement, no matter how slight, toward consolidation of power in one, rather than three, branches of government, we must exercise the utmost caution. “Frequently an issue of this sort will come before the Court clad, so to speak, in sheep’s clothing: the potential of the asserted principle to effect important change in the equilibrium of power is not immediately evident, and must be discerned by a careful and perceptive analysis.” Morrison v. Olson, 487 U.S. 654, 699, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J., dissenting).
¶ 31. Justice Chandler, in his dissent, would apply the doctrine of stare decisis to Stewart. Cries of stare decisis are the inevitable effect caused by a call to overturn a decades-old case such as Stewart, and the Court should take care to adhere to the doctrine where appropriate. However, I discern no reason to dogmatically cling to it here. As Justice Chandler points out, we apply stare decisis when the Legislature ratifies by re-enacting or amending the statute without directly addressing or contradicting a holding of ours from an earlier case. See Caves v. Yarbrough, 991 So.2d 142, 153 (¶ 41) (Miss.2008). However, the Legislature has not amended or changed Section 97-3-79 since before Stewart, and we have flatly rejected that “the Legislature’s mere silence is enough .... ” absent an amendment, to invoke stare decisis. Caves, 991 So.2d at 153.
¶ 32. More generally, we have written as follows:
In stare decisis generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is “pernicious,” Stone v. Reichman-Crosby Co., 43 So.2d 184,190 (Miss.1949); “impractical,” Robinson v. State, 434 So.2d 206, 210 (Miss.1983) *1004 (Hawkins, J., concurring); or is “mischievous in its effect, and resulting in detriment to the public.” Childress v. State, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for “evils attendant upon a continuation of the old rule.” Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 467 (Miss.1983).
Caves, 991 So.2d at 151-52 (¶ 36) (quoting State ex rel. Moore v. Molpus, 578 So.2d 624, 635 (Miss.1991)). Above, I attempted to go into some detail of the importance of the separation of powers and explain that even a small encroachment of the Court into the legislative sphere should be prevented. For the reasons discussed, I have no difficulty in labeling the Stewart Court’s amendment of Section 97-3-79 pernicious and mischievous in its effect. See Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 454-55, 59 S.Ct. 325, 83 L.Ed. 272 (1939) (Black, J., dissenting) (“[T]he rule of stare decisis cannot confer powers upon the courts which the inexorable command of the Constitution says they shall not have.”); Robinson v. City of Detroit, 462 Mich. 439, 473, 613 N.W.2d 307, 324 (2000) (Corrigan, J., concurring) (“If a prior decision of this Court reflects an abuse of judicial power at the expense of legislative authority, a failure to recognize and correct that excess, even if done in the name of stare decisis, would perpetuate an unacceptable abuse of judicial power”).
¶ 33. On a final stare decisis note, I acknowledge that Mississippi Code Section 97-3-65(4)(a), which sets the penalty for forcible rape, provides as follows:
Every person who shall have forcible sexual intercourse with any person, or who shall have sexual intercourse not constituting forcible sexual intercourse or statutory rape with any person without that person’s consent by administering to such person any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction, shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment, the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.
Miss.Code Ann. § 97-3-65(4)(a) (Rev. 2014). Without question, the above-quoted sentencing directive mirrors that of the armed robbery sentencing statute at issue, and in Lee v. State, 322 So.2d 751, 753 (1975), we added the same amendment to Section 97-3-65(4)(a) that the Stewart Court would later add to Section 97-3-79. Unlike Section 97-3-79, the Legislature amended the forcible rape statute, Section 97-3-65(4)(a), since Lee was decided and has never spoken to the Lee holding. Accordingly, the doctrine of stare decisis via subsequent legislative amendment arguably would apply to Lee and Section 97-3-65(4)(a). On the other hand, while Section 97-3-79 is worded similarly to the forcible rape statute, I see no reason to apply the Legislature’s amendment of a different statute to the question of whether stare decisis applies to Stewart.
¶ 34. Even if the Legislature had amended Section 97-3-79, I would not agree that stare decisis saves the Stewart Court’s amendment of it. I simply cannot agree that our assumption that the Legislature reads our opinions and ratifies our holdings by their silence is enough to ratify an unconstitutional encroachment upon its authority. While, as I concede above, we have held that the Legislature ratifies via its silence our interpretation of a statute by re-enacting or amending the statute without directly addressing or contradicting a holding of ours from an earlier case, *1005 see Caves, 991 So.2d at 153 (¶ 41), the combination of legislative action with legislative silence can itself be a pernicious thing for a court trying to discern the meaning of statutory pronouncements.
The last string to respondents’ and the Government’s bow is their argument that two amendments to Title VI “ratified” this Court’s decisions finding an implied private right of action to enforce the disparate-impact regulations.... Respondents point to Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. [353] at 381-382, 102 S.Ct. 1825 [72 L.Ed.2d 182 (1982) ], which inferred congressional intent to ratify lower court decisions regarding a particular statutory provision when Congress comprehensively revised the statutory scheme but did not amend that provision. But we recently criticized Curran’s reliance on congressional inaction, saying that “[a]s a general matter ... [the] argumen[t] deserve[s] little weight in the interpretive process.” Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S., [164] at 187, 114 S.Ct. 1439 [128 L.Ed.2d 119 (1994)]. And when, as here, Congress has not comprehensively revised a statutory scheme but has made only isolated amendments, we have spoken more bluntly: “It is ‘impossible to assert with any degree of assurance that congressional failure to act represents’ affirmative congressional approval of the Court’s statutory interpretation.” Patterson v. McLean Credit Union, 491 U.S. 164, 175, n. 1, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (quoting Johnson v. Transportation Agency, Santa Clara Cty., 480 U.S. 616, 671-672, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (Scalia, J., dissenting)).
Alexander v. Sandoval, 532 U.S. 275, 291-92, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). I find persuasive the warning, “It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it.” J. Madison, The Federalist, No. 48 (J. Cooke ed. 1961). Accordingly I consider the United State Supreme Court’s concerns to be compelling, especially in the context of ratifying an unconstitutional encroachment by the Court into the power of the Legislative branch.
¶ 35. Justice Chandler correctly raises concerns about the retroactive application of any holding overruling Stewart to Hampton. See Rogers v. Tennessee, 532 U.S. 451, 457, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). Were the majority to overrule Stewart, we would have to analyze whether or not the overruling of it would be retroactive and effective as to Hampton’s sentence. For example, the Supreme Court of the United States has written,
Deprivation of the right to fair warning, we continued, can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face. For that reason, we concluded that if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, the construction must not be given retroactive effect.
Rogers, 532 U.S. at 457, 121 S.Ct. 1693 (internal quotations and citations omitted). However, in light of the fact that a majority of the Court disagrees and wishes to uphold Stewart, I will forego the analysis as moot.
¶ 36. For the foregoing reasons, I would overrule Stewart.
DICKINSON AND RANDOLPH, P. JJ., AND PIERCE, J., JOIN THIS OPINION IN PART.

. The statute provided as follows:
In any case in which the penalty prescribed *1002 by law upon the conviction of the accused is death, except in cases otherwise provided, the jury finding a verdict of guilty may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly; but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death, unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life.
Bullock, 102 So.2d at 690 (quoting Section 2536, Code of 1942).